---

## Case No. 811.

### Ex parte BALL.

### [3 App. Com'r Pat. 344.]

Circuit Court, District of Columbia. July 2, 1860.

PATENTS FOR INVENTIONS—REISSUE—EVIDENCE.

[1. On an application for a reissue of a defective patent, the model filed by the patentee in compliance with the statute is admissible as evidence of the scope of the original invention, and the defects of the original patent.]

[2. The inventor was entitled to a reissue of letters patent No. 832 to Ephraim Ball, for improvements in reaping machines.]

Appeal [by Ephraim Ball] from the decision of the commissioner of patents, for refusing, on said Ball's application, to reissue, in four divisions, his reissued patent No. 832, for improvements in mowing machines. [Reversed.]

MORSELL, Circuit Judge. In this specification he has stated under his first division, No. 1, his claims, particularly consisting of four clauses; under No. 2, consisting of one; under No. 3, consisting of three clauses; and under No. 4, consisting of nine clauses.

He has filed five reasons of appeal: 1st. That the commissioner erred in refusing the reissue on the ground that new matter had been introduced, which the original model, papers, and drawings did not warrant or justify. 2nd. On the ground that certain references which he cited presented an anticipation of the useful invention, and parts of the useful invention for which patents were prayed. 3rd. That the reasons and objections which he gives therefor are untenable, and cannot be sustained by the patent law. 4th. For refusing to consider certain evidence which the said Ball presented in support of his said application, viz. the affidavits of N. C. Driver and Wm. H. Bell. 5th. Because, having failed to show that the said Ball was not the first and original inventor of the useful invention claimed, he erred in not allowing the application and division as prayed for.

The commissioner, in his report, in reply to said reasons, says: "The five reasons assigned for taking this appeal present three points for consideration: First, that the commissioner erred in deciding that the new applications and drawings embraced inadmissible new matter, which enlarged the scope of the original invention patented. Secondly, that it was error to decide that the alleged novelty of the invention had been anticipated by prior inventors, as evidenced by the references cited. Thirdly, that the commissioner erred in refusing to consider certain affidavits which this applicant proposed to submit and make them a part of the record. The grounds of the decision referred to in the first reason of appeal, as above cited, are clearly and fully set forth in the report of the board of examiners, to which attention is invited. Reasons for requiring the amendment will also be found in the official letter dated April 26." In regard to the second point or reason of appeal, it will be observed by references to the letters dated Feb'y 14, 1860, on the first examination, and April 26, that the office has not decided that this application does not involve some invention of a novel and patentable character, but rejected the application and refused the several divisions and claims for patents as prayed for, and required what were deemed necessary amendments, in view of the condition of the art at the date of the original patent. The grounds for refusing to consider the affidavits which were offered were twofold: First, because these affidavits were not furnished until after the examination had been made and an appeal taken, upon which a board of examiners had concluded their report, and submitted it to the commissioner. Secondly, because the law authorizes the reissuing of a patent for the same invention only, which was described in the surrendered original patent. What the same invention is must be determined from the original record, which cannot be enlarged by the suggestions of either the applicant or others. This is the settled practice of the office, under its rules, (vide section 44, p. 451,) and is imperatively necessary to protect substantive improvements, which have been patented to others, from being merged in the new descriptions of applications for the reissue of patents of earlier date.

I suppose the principles settled by me in the case 831, [Ex parte Ball, Case No. 810,] showing the origin, nature, and extent of the right involved in the above proposition, fully covers the question, and therefore little or nothing more need be added here, beside the broad principle of reason and justice upon which the right is supposed to be based. It was supposed that the provisions of the statute were not in any manner intended to narrow or restrain, but were confirmatory thereof to the fullest extent. As I understood the meaning of the commissioner, it is that what he calls the original record, however defective it may be in describing the invention, it must nevertheless be considered conclusive. Now it is true, as a general rule of law, that a record is conclusive of the matter it contains, but it will not be denied that the legislature has a right to change, alter, or even abolish the rule, and in cases of this kind it has been done, for the language is that whenever any patent * * * shall be imperative by reason of a defective or insufficient description, or specification. The word "any" is

surely broad enough to embrace the original record or patent; then suppose the defect to be in that and in the specification also, however they are to be amended. It becomes a question of the admissibility of evidence, and the next highest evidence of the true extent of the invention is the model, being one of the prerequisites of the statute, and of the foundation upon which the patent issues; it is the highest original source which exists, to be resorted to under such circumstances for showing the defects, and I think may be used. I am happy to find that in this opinion, I am fortified by Judge Holt and the former Commissioner Bishop's opinion on the same subject.

The commissioner refers me to the report of the examiners adopted by him as his decision. The first objection stated in that document relates to the capacity of the machine for carrying its cutter apparatus folded upon the main-frame, the adjustability of the length of the pitman which communicates motion to the cutters, &c. The description as here given of the claim is supposed to be different from that which has been made according to the true mode of folding as claimed, which is not by turning the runners 22 and cutting apparatus upon their pivot K and then fold them over on the machine by means of the hinge I. The hinge I is attached to the rear of a swivelled piece which is free to turn on the socket piece, J, and the folding of the finger-beam is due to the swivel piece which turns in the socket-piece and not turned on pivot K, which holds the socket piece to the under side of the projecting end of the main frame. It would not therefore be necessary to disorganize the machine before the finger-beam could be folded, the hinge I being attached to the rear of the swivel-piece and not on the socket-piece. It is alleged that "Mr. Ball has never proposed to connect the socket-piece in any other position than just where it is shown in the original patented drawing, and also in the original model, viz. to the under side of the cross-piece of the frame, and that while the socket-piece is so attached, the finger-beam can be raised, turned, and folded over the main frame in front of the axis of the main-supporting wheels, and further that it is owing to the socket-piece being attached to the under side of the front cross-piece as described in the reissues; that it is held in the folded position, while the machine is being drawn from one field to another, and that too without any other means to hold it close to the side of the frame than simply its own gravity, a means which the commissioner seems to have overlooked." I have examined the model of Ball, and am satisfied that it is capable of the alleged function, and which is not considered as new matter. It has already been shown that the original model may be resorted to as evidence of the extent of the true invention, with respect to its affecting third persons by the reissues; it is probable that none other than those ex-

amining for the purpose of pirating the invention would be the description of persons, and therefore it is not of much matter. I think it appears also that neither the Wheeler nor Haines machine is affected by the claims as made by Ball. I have also satisfied myself by a careful examination and comparison that neither the Sylla and Adams machine of 1853, P. Sylla's of 1855, nor Haines' of 1855 are applicable to Ball's ninth claim.

As to the number of models referred to, without stating specifically what part or parts are applicable to the claims of Ball, and on account of the "condition of the art," I have not particularly examined them. And I hope the commissioner, upon more reflection, will be satisfied that the law does not impose any such unreasonable, onerous duty on the judge. From the foregoing views which I have taken of this case, and of the principles settled in case 831, [Ex parte Ball, Case No. 810,] I am satisfied that there is error in the refusal to grant the said reissue, and the said decision is hereby reversed and annulled, and that the said reissues be made accordingly as prayed.